IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COLEMICHAEL INVESTMENTS, L.L.C, ) | |
| ) | |
| Appellee / Cross-Appellant, ) | |
| v. ) | Case No. 09 C 4627 |
| ) | Judge Virginia M. Kendall |
| BARRY E. BURKE, ) | |
| ) | |
| Appellant / Cross-Appellee. ) | |

## MEMORANDUM OPINION AND ORDER

Debtor-Appellant Barry E. Burke ("Burke") appeals to this Court, which has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(1), from a decision of the United States Bankruptcy Court for the Northern District Court of Illinois ("the bankruptcy court") holding that his judgment debt arising from a Texas state-court default judgment is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(4). *See In re Burke*, 405 B.R. 626 (Bankr. N.D. Ill. June 10, 2009). Bankruptcy plaintiff and appellant ColeMichael Investments, LLC ("ColeMichael") filed a cross-appeal in order to preserve its argument that, as an alternative ground for upholding the bankruptcy court's holding of nondischargeability, the doctrine of collateral estoppel should apply to the Texas judgment. For the reasons stated below, the Court affirms the decision below in its entirety.

## STANDARD OF REVIEW

This Court has jurisdiction to review final bankruptcy court decisions. 28 U.S.C. § 158(a)(1); Fed. R. Bankr. P. 8001 and 8002. On appeal, a district court reviews a bankruptcy court's factual findings for clear error, and its legal conclusions de novo. *See Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994); *In re Mayer*, 173 B.R. 373, 377 (N.D. Ill. 1994).

In order for a debt to be nondischargeable under any of the subsections of 11 U.S.C. § 523, the creditor bears the burden of proving the applicability of one of the statutory provisions by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991); *Matter of Bero*, 110 F.3d 462 (7th Cir. 1997). "[E]xceptions to discharge of a debt are construed strictly against a creditor and liberally in the debtor's favor." *Kolodziej v. Reines* (*In re Reines*), 142 F.3d 970, 972-73 (7th Cir. 1998).

## FACTUAL AND PROCEDURAL BACKGROUND

The Court adopts the relevant facts as set forth by the bankruptcy court. *See* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...."). The facts summarized below were presented to the bankruptcy court by stipulation of the parties.

### I. The Joint Venture Funds

ColeMichael is a Nevada limited liability company with its principal place of business in Dallas, Texas. Burke, an individual Illinois resident, was a licensed Illinois attorney from 1976 until his disbarment in 2006. Burke was also a member of the bar of this District.

On October 2, 1996, ColeMichael entered into a joint venture participation agreement ("the joint venture agreement") with Bayvest Capital Funding Limited ("Bayvest") for the purposes of investing in a "high yield capital enhancement strategy." Burke agreed to serve as legal counsel for the joint venture. The joint venture agreement provided in relevant parts that the venture would be managed, directed, and administered by Bayvest acting as a fiduciary for the venture; that the funder for the plan (that is, ColeMichael) would invest $300,000 in addition to a $1,000 retainer and expense fund for Burke's use; and that Burke would comply with the detailed provisions of a Letter

2

of Instructions with regard to his handling of the investment fund. Pursuant to the joint venture agreement, ColeMichael transferred the sum of $301,000 into Burke's client trust account. Burke accepted the funds and agreed to the instructions he had been given, which required that he ensure that ColeMichael did not suffer any loss or diminution of the funds and that he obtain a bank guarantee in exchange for any release or transfer of the funds.

Burke then proceeded to transfer the funds to an account at a foreign financial institution without prior notice to ColeMichael and without ColeMichael's approval, authorization, or consent. On June 13, 1997, Burke sent ColeMichael a letter in which he "assumed full responsibility and authority for the disbursement of funds to ColeMichael pursuant to" the joint venture agreement, and informed ColeMichael that it could expect disbursement of the funds no later than June 27, 1997.

ColeMichael did not receive its funds. Over the next several years, Burke provided numerous colorful explanations for his failure to pay ColeMichael, which at various times featured anonymous "Arab principals," feuding oil companies, British arbitrators, Singaporean thieves, and assorted mysterious "investors." At one point, Burke and Bayvest told ColeMichael that they had obtained an interest in another investment "that would ultimately result in ColeMichael receiving a total return of over $20,000,000." On May 2, 1998, Bayvest represented to ColeMichael that it would receive a guaranteed minimum payment of $3,695,652 as a return on its investment, and that under Burke's management it could expect to receive a total of $18,478,261 over a one-year period from its continued investment. On May 29, 1998, Burke represented to ColeMichael that he had control of a European-based fund of which ColeMichael's share was $3,200,000. As of the bankruptcy court's decision, ColeMichael had received neither a return of its original investment nor any additional

payment, and Burke could not provide for any accounting of the funds that had been deposited into his client trust account.

**II. The Texas Proceedings**

In October of 1998, ColeMichael initiated proceedings (the "Texas proceedings") against Burke and other defendants in the District Court of Dallas County, Texas ("the Dallas County District Court"). The Texas proceedings sought to recover damages from Burke, Bayvest, and other co-defendants under a variety of legal theories, including breach of contract, accounting, fraud, fraudulent inducement, breach of fiduciary duty, legal malpractice, negligence, oppression of a minority venturer, and negligence per se.

Both original and amended petitions in the Texas proceedings were sent to Burke at his home address, via certified mail, by the Texas Secretary of State. ColeMichael's Texas attorney also sent a letter to Burke in connection with the Texas proceedings, which Burke received prior to November 30, 1998. Nevertheless, Burke failed to appear or file an answer in the Texas proceedings. On January 7, 1999, the Dallas County District Court entered a default judgment as to Burke, finding that he had been properly served and deeming all facts alleged by ColeMichael admitted as to Burke. Subsequently, the Dallas County District Court entered a Final Default Judgment on March 11, 1999, as to Burke, Bayvest, and co-defendant John Bright (the "Final Default Judgment"). The Final Default Judgment decreed that ColeMichael could recover the total sum of $21,178,261 from the default defendants, jointly and severally.[1] Burke did not appeal the Final Default Judgment; nor did

---

[1] The record indicates that this sum was reached by totaling the sums promised by Bayvest and Burke to ColeMichael in two separate letters dated June 13, 1997 (promising $2,700,000 in return on ColeMichael's investment) and May 2, 1998 (representing that Bayvest intended to invest ColeMichael's funds in a trading program that would realize $18,478,261 in return).

4

he file any papers in the Dallas County District court challenging, seeking to vacate, or seeking to set aside the Final Default Judgment.

### III. The Illinois Proceedings

In November of 1999, ColeMichael registered the Final Default Judgment in the Circuit Court of Cook County, Illinois, and caused a citation to discover asserts to be served upon Burke (the "Cook County proceedings"). Burke was called for his appearance in answer to the citation on February 22, 2000. Burke then filed a motion to stay enforcement of the Final Default Judgment, stating through his counsel that he intended to challenge the Final Default Judgment in Texas. After a hearing in the Cook County proceedings, all matters including the motion to stay were continued for hearing to March 8, 2000. On that date, Burke filed a voluntary Chapter 7 bankruptcy petition, resulting in an automatic stay of the Cook County proceedings.

On April 10, 2000, Burke's bankruptcy case was dismissed due to his failure to file required schedules, and he was barred from filing a subsequent petition without leave of the court for 180 days because of his abuse of the bankruptcy process. The automatic stay was lifted, and Burke was eventually ordered to appear in the Cook County proceedings on May 31, 2000. At that hearing, Burke and his counsel signed an agreed order withdrawing with prejudice the motion to stay and stating that Burke "consent[ed] to the validity and enforceability, in its entirety and before any court or tribunal with jurisdiction over Burke or to which Burke is or may be entitled" of the Final Default Judgment. The agreed order also states that Burke "represent[ed] and warrant[ed] that he has the rights to receive funds which are sufficient to, and from which he will, satisfy the [Final Default Judgment]" and that he expected to do so prior to the continued date for the citation to discover assets of July 6, 2000.

On November 30, 2000, with the judgment still unpaid, Burke submitted an affidavit in the Cook County proceedings stating: "I further represent, warrant, testify, and assure ColeMichael, its counsel and the Court, that I have every intention of paying, and in good faith believe that I will have the financial ability to pay, the [Final Default Judgment] in full together with all accrued interest no later than Jan[uary] 31, 2001." No payment was forthcoming.

A series of proceedings in the Cook County Circuit Court dragged out over the next seven years, during which Burke was twice found in civil contempt and incarcerated in the Cook County jail. In its first contempt finding, the Cook County Circuit Court found that Burke had "deliberately and repeatedly lied to the [c]ourt, engaged in a continuing and contumacious pattern of disregard for the [c]ourt's direct orders, and attempted to frustrate the intended process of the [c]ourt" and that his conduct "was knowing and wilful, an affront to the dignity and integrity of this [c]ourt, and an effort to obstruct justice."

### IV. The Bankruptcy Court Proceedings

On January 24, 2008, Burke filed a second Chapter 7 voluntary bankruptcy petition. ColeMichael then filed an adversarial complaint in the bankruptcy court objecting to the discharge the judgment debt owed to it. Count I of the complaint alleged that Burke was collaterally estopped from re-litigating the nondischargeability of the default judgment. Counts II through IV sought judicial determinations of nondischargeability pursuant to 11 U.S.C. § 532(a)(2)(A), § 523(a)(4), and 523(a)(6), respectively.

The bankruptcy court held that collateral estoppel did not apply, because the Texas Final Default Judgment did not contain detailed findings, entered on the basis of issues actually litigated, that would be sufficient for the court to determine whether the necessary elements of

nondischargeability had been met. The court further held that the debt did not fall within the exceptions to discharge set forth in § 523(a)(2)(A) or § 523(a)(6). The court found that § 523(a)(4) did apply, however, because ColeMichael had demonstrated by a preponderance of the evidence that the debt had been caused by Burke's defalcation while acting as ColeMichael's fiduciary. The court therefore held that the debt reflected by the Final Default Judgment in the amount of $21,178,251 was nondischargeable, and additionally found that interest in the amount of $34,565,369.51 was nondischargeable.[2] The Court therefore granted judgment to ColeMichael in the total amount of $55,743,630.51.

## DISCUSSION

Neither party appeals the bankruptcy court's decision with respect to the non-applicability of § 523(a)(2)(4) or § 523(a)(6). Burke's appeal focuses on the court's holding that Burke had committed a defalcation while acting as ColeMichael's fiduciary such that the Final Default Judgment debt was held nondischargeable pursuant to § 523(a)(4). ColeMichael's cross-appeal asks that this Court affirm the decision below either under § 523(a)(4) or on the alternative ground that collateral estoppel prevents Burke from challenging the applicability of that section.

**I. The Bankruptcy Court's Holding of Nondischargeability Pursuant to § 523(a)(4)**

In order for Burke's judgment debt to be nondischargeable under § 523(a)(4), ColeMichael must demonstrate by a preponderance of the evidence, *see Grogan*, 498 U.S. at 291, that Burke acted in a fiduciary relationship with respect to it, and that Burke's debt to ColeMichael arose from a fraud or defalcation during that relationship. *Matter of Woldman*, 92 F.3d 546, 547 (7th Cir. 1996).

---

[2] Burke does not raise any issues concerning the nondischargeability of the interest in his appeal.

### A. The Court Below Correctly Held that Burke Was ColeMichael's Fiduciary

In this context, whether there is a fiduciary relationship is determined according to federal law standards. *See In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). In order for a breach of fiduciary duty to potentially render a debt nondischargeable under § 523(a)(4), the fiduciary's duty must have existed prior to the alleged breach. *See In Re Marchiando*, 13 F.3d 1111, 1115-16 (7th Cir. 1994). That is, § 523(a)(4) "reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting discharge . . . ." *Woldman*, 92 F.3d at 547. A lawyer-client relationship is a fairly standard fiduciary relationship in that it requires the principal-client to place a particular confidence in his fiduciary-attorney. *See Frain*, 230 F.3d at 1017. Not all debts arising out of the attorney-client relationship will be nondischargeable under § 523(a)(4), however, because "[n]ondischargeability is usually reserved for those situations where money or property has been entrusted to the attorney-debtor." *Koenig v. Grotrain* (*In re Grotrian*), 217 B.R. 1017, 1020 (Bankr. N.D. Ind. 1997).

Burke concedes that an attorney-client relationship is generally deemed a fiduciary one. Moreover, he cannot dispute that this is a situation in which money was entrusted to the attorney-debtor. He argues, however, that the first part of the test, the existence of a fiduciary relationship, was not met in the proceedings below because ColeMichael did not demonstrate that it, and not the joint venture, was Burke's client. Burke has not presented any controlling or persuasive authority to counter the bankruptcy court's citation to the Illinois rule that "'where an entity is by law an aggregate of individuals, the lawyer has an attorney-client relationship with each of those individuals.'" *Burke*, 405 B.R. at 650 (*quoting Pucci v. Santi*, 711 F. Supp. 916, 927 n.4 (N.D. Ill.

8

1989)); *see also Metro. Life Ins. Co. v. Guardian Life Ins. Co. of Am.*, No. 06 C 5812, 2009 WL 1439717 (N.D. Ill. 2009) ("the authority from this district" supports the proposition that an attorney representing a partnership represented each member of that partnership). Where, as here, an attorney is retained by an organization with "the sole purpose of furthering the common interests of its members," it is reasonable for him to behave as if each member of the organization is his client. *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 930 (7th Cir. 1972).

In arguing to the contrary, Burke relies on Illinois Rule of Professional Conduct 1.13(a), which states that a lawyer employed or retained by an organization represents the organization. Even if reference to state ethical rules is permitted here—in a bankruptcy context presenting questions of federal law, *see In re McDade*, 282 B.R. 650, 658 (Bankr. N.D. Ill. 2002)—the rule also states that a lawyer representing an organization *may* also represent any of its members or shareholders, and thus does not support Burke's argument that he simply could not have been ColeMichael's attorney in addition to being the organization's counsel. *See* Ill. R. Prof. Conduct 1.13(g).

Moreover, even if Burke did not consider himself to be ColeMichael's attorney with respect to the joint venture, it is apparent that an entity that transfers a retainer to a lawyer's client trust account, relies upon that lawyer's professional judgment, and believes the lawyer to be acting on its behalf reasonably views the relationship as an attorney-client one. *See In re Grotrian*, 217 B.R. at 1021; *see also Westinghouse Elec. Corp. v. Kerr-Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978) ("The professional relationship . . . hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.").

Finally, Burke's conduct with respect to ColeMichael's funds reveals that there was a substantial inequality in power and knowledge between the parties here, and supports the bankruptcy

9

court's finding that "Burke was in a position of ascendency over ColeMichael" such that he may fairly be deemed ColeMichael's fiduciary. *Burke*, 405 B.R. at 650. ColeMichael reposed its confidence and its funds in Burke's management, paid him a $1,000 retainer for his particular professional services, and reasonably relied upon his agreement to follow the detailed instructions that he had been given with respect to disbursement of ColeMichael's investment funds. Moreover, since this entrustment took place at the time that the parties entered into the joint venture agreement and was sealed at the time that ColeMichael deposited its funds into Burke's client trust account, it existed prior to Burke's alleged wrongdoing as required by the § 523(a)(4) analysis.

Although Burke now argues that he did not consider ColeMichael to be his client and that ColeMichael was represented at all relevant times by another attorney (who is evidently now deceased), his only support for these factual assertions in self-serving testimony from a deposition that he gave in the Cook County proceedings. The admissibility of that deposition, but not the factual accuracy of the substantive content thereof, was stipulated before the Bankruptcy court when this case was submitted to that court on stipulated facts.[3] This Court does not find self-serving statements that were not properly before the court below a sufficient basis on which to overturn the court's factual and legal finding that Burke was acting as ColeMichael's fiduciary when he transferred $301,000 of its funds out of his client trust account, never to be seen again.

---

[3] Burke apparently believes that ColeMichael's stipulation to the admissibility of the deposition in order to streamline the presentation of evidence to the Bankruptcy court required the bankruptcy court to consider, and accept as true, the entire factual content of the deposition no matter how incredible the court found his self-serving version of events to be. Burke cites to no rule of evidence, procedure, or law that fairly supports this far-fetched proposition.

### B. The Court Below Correctly Held that the Final Default Judgment Arose from Burke's Defalcation in His Capacity as ColeMichael's Fiduciary

Burke further argues that his decision to release the funds without the bank guarantee that ColeMichael's detailed instructions required him to obtain was not a defalcation because he reasonably believed that the release was necessary in order to protect the intended investment deal. Defalcation can be defined as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois* (*In re Zois*), 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996). Intent or bad faith is not required, *see Green v. Pawlinski* (*In re Pawlinski*), 170 B.R. 380, 389 (Bankr. N.D. Ill. 1994), but a mere negligent breach of fiduciary duty is not by itself sufficient to constitute a defalcation. *Meyer*, 36 F.3d at 1382-85. In sum, defalcation in this context requires something more than mere negligence or mistake, but does not require conduct rising to the level of actual fraud. *See id.* at 1385.

In arguing that his conduct was merely negligent or mistaken—misguided in hindsight but not willful or reckless given the facts known to him at the time—Burke presents this Court with an interesting multi-national tale involving a nefarious "Dr. Bowman," a London investigation, and a pressing need to release ColeMichael's funds with no guarantee in order to avoid "screwing up the deal." His factual support for this story again consists solely of self-serving statements in his citation deposition, facts that were not stipulated before the bankruptcy court and do not in any event persuade this Court that the bankruptcy court's factual findings were clearly erroneous. In any event, the Court need not credit Burke's subjective belief that his actions were reasonable at the time because he concedes that the inquiry is an objective one. *See In re McDade*, 282 B.R. at 661. An objectively reasonable fiduciary, given the facts as they were stipulated before the bankruptcy court,

would not have released the funds and would not have failed to provide any reasonable accounting for them after the release.

Indeed, the Court need not look beyond the basic core of facts as stipulated in the bankruptcy court to find that the Bankruptcy Court committed no error in holding that Burke committed a defalcation while acting as ColeMichael's fiduciary. It was undisputed that Burke misappropriated ColeMichael's funds by failing to comply with the instructions requiring that he not release them without a bank guarantee, and it is undisputed that he has not properly accounted for those funds subsequent to their release—indeed, he has not accounted for them at all.[4] Burke's decision to release the funds was at least willful or reckless, and his nearly-decade long refusal to provide a full and complete accounting of the funds is certainly more than negligent.[5]

"[O]ne primary purpose" of the bankruptcy code is "to provide only honest debtors with relief." *Disch v. Rasmussen*, 417 F.3d 769, 772 (7th Cir. 2005). Given that objective and the totality of the circumstances here, the Court affirms the bankruptcy court's holding that Burke's debt arose from his defalcation while acting as ColeMichael's fiduciary and is therefore nondischargeable under § 523(a)(4).

---

[4] ColeMichael refers in its brief to Burke's arguably having "absconded" with the funds. Burke's reply brief requests in passing, and without adequate legal development for the Court to seriously consider the request, that this remark be stricken. The Court denies the request to strike the reference.

[5] Burke argues that he cannot be held liable under the defalcation doctrine for any actions following his release of the funds, and thus that his pattern of obfuscation cannot be used to infer that the release was anything more than negligent. As noted above, however, failure to account for funds placed in a fiduciary's trust is as much a defalcation as misappropriation of those funds. *See Zois*, 201 B.R. at 506. Moreover, the bankruptcy court appropriately considered Burke's multiple foregone opportunities to account for the funds, including his allowance of the destruction of records of the joint venture, as facts contradictory to Burke's assertion that he was "merely negligent or did not know what he was doing." *Burke*, 405 B.R. at 651.

**II. The Bankruptcy Court's Holding that Collateral Estoppel Did Not Apply**

The bankruptcy court rejected ColeMichael's argument that the Final Default Judgment had a collateral estoppel effect requiring a finding of nondischargeability on three separate occasions: in its order denying ColeMichael's motion for judgment on the pleadings, *In re Burke*, 398 B.R. 608, 626-28 (Bankr. N.D. Ill. Dec. 18, 2008); in its denial of Burke's reconsideration of that opinion, *In re Burke*, 2009 WL 435099, *3-4 (Bankr. N.D. Ill. Feb. 23, 2009); and in the final order from which Burke now appeals. In each instance, the court correctly stated that collateral estoppel could only apply if the facts sought to be litigated in the second action had been fully and fairly litigated in the prior action, and found that the Final Default Judgment did not reflect specific and detailed factual findings sufficient to invoke collateral estoppel in the bankruptcy proceeding. ColeMichael presents this argument as an alternative ground for the affirmance of the decision below; as the Court has already determined that the decision below may be affirmed on its merits it will consider this proposed alternative ground only briefly.

Under Texas law (the substantive body of law under which the judgment sought to be used for collateral estoppel here was entered), a default judgment is not "actually litigated" for collateral estoppel purposes unless the record reflects factual findings sufficient to support a determination "that the pertinent issue was litigated and decided." *Caton v. Trudeau* (*Matter of Caton*), 157 F.3d 1026, 1029 (5th Cir. 1998). No such factual findings are typically made where there is a no-answer default judgment, which is why "[c]ourts generally hold that no-answer default judgments fail to meet the actually litigated prong of the issue preclusion test." *Gober v. Terra + Corp.* (*Matter of Gober*), 100 F.3d 1195, 1205 (5th Cir. 1996) (applying Texas law).

13

ColeMichael's argument to the contrary is self-evidently flawed, as ColeMichael states that under Texas law, "a party is collaterally estopped from relitigating issues addressed and resolved in prior litigation . . . ." (R. 14, Br. of ColeMichael Investments, at 19.) Here, no factual issues were actually addressed or resolved in the Texas proceedings, because there was no adversarial proceeding and no specific factual issues were addressed or resolved by the court. Indeed, the Dallas County District Court here apparently made no factual findings beyond deeming the facts of the complaint admitted due to Burke's failure to answer. Most importantly, the court did not make specific findings about the elements of any of the nondischargeability provisions that were at issue before the bankruptcy court. Thus, the bankruptcy court did not err in finding that the factual underpinnings required for application of those provisions had not been actually litigated before the Texas court.

ColeMichael argues that Burke's stipulation to the validity and enforceability of the Final Default Judgment in the course of the Cook County proceedings, in lieu of challenging the Judgment itself, is sufficient to invoke the doctrine of collateral estoppel in this proceeding. None of the cases upon which ColeMichael relies, however, apply collateral estoppel to a no-answer default judgment in which the party sought to be estopped never participated and in which the factual bases for the judgment are unstated. In many of the cases cited by ColeMichael, the party sought to be estopped had actively frustrated the resolution of the prior proceeding, either by refusing to cooperate therein or by actively undermining the progress of the litigation. However, there are no allegations here that Burke actively impeded the Texas proceedings; the cases relied upon by ColeMichael in this regard are thus clearly distinguishable. *See Wolstein v. Docteroff* (*In re Docteroff*), 133 F.3d 210, 215 (3rd Cir. 1997) (default judgment entered after intially-defending debtor "realized the meritlessness of his position and decided to frustrate orderly litigation by willfully obstructing discovery" held to

14

have collateral estoppel effect); *Bush v. Balfour Beatty Bahamas, Ltd.* (*In re Bush*), 62 F.3d 1319, 1324 (11th Cir. 1995) (default judgment entered as a sanction against debtor for his "dilatory and deliberately obstructive conduct" held to have collateral estoppel effect); *Fed. Dep. Ins. Corp. v. Daily* (*In re Daily*), 47 F.3d 365, 368 (9th Cir. 1995) (party who had refused to participate in discovery and pre-trial proceedings, including defying an order to compel, fairly estopped from relitigating issues decided against him).

In its reply brief, ColeMichael focuses on an argument that where the parties have consented to a judgment intending for that consent to have preclusive effect in later proceedings, collateral estoppel applies even though the consent judgment, by its nature, does not involve actually litigated or resolved issues. *See Fed. Trade Comm'n v. Austin* (*In re Austin*), 138 B.R. 898 (Bankr. N.D. Ill. 1992). In context of a consent judgment, however, the parties agree at the time that judgment is entered to whatever factual findings are necessary to support the judgment, and thus affirmatively relinquish their right to challenge those findings and the preclusive effect of that judgment to the extent that such an effect is reasonably foreseeable. *See Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987). Burke's stipulation to the enforceability of the Final Default Judgment is simply not analogous to an affirmative consent, at the time of judgment, to the preclusive effect of specifically-consented factual findings. The Court therefore agrees with the bankruptcy court's conclusion that a post-judgment stipulation to enforceability is not sufficient to replace the lack of requisite factual findings in an earlier judgment.

The Court thus finds no factual or legal error in the bankruptcy court's holding that collateral estoppel does not apply in this case, and denies ColeMichael's cross-appeal.

## **CONCLUSION AND ORDER**

The bankruptcy court did not err in holding that ColeMichael's claim against Burke's bankruptcy estate resulted from Burke's defalcation while acting as ColeMichael's fiduciary, and thus that the debt is nondischargeable pursuant to § 523(a)(4). The Court thus affirms that holding. Burke did not present any challenges to the bankruptcy court's additional finding that the interest on the debt was also nondischargeable; the Court thus affirms the bankruptcy court's finding that a total debt of $ 55,743,630.51 is nondischargeable. The Court denies ColeMichael's cross-appeal, finding no error in the bankruptcy court's holding that collateral estoppel does not apply here.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 1, 2010